[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-14722

_____

D. C. Docket No. 3:10-cv-00695-HES-TEM

JOANN COOPER,
individually and as next friend of D.C.,

                                                     Plaintiff-Appellee,

versus

JOHN RUTHERFORD,
in his official capacity as Sheriff of the
Consolidated City of Jacksonville and
Duval County, Florida, et al.,

                                                     Defendants,

RYAN BLACK,

                                                     Defendant-Appellant

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 20, 2012)

Before DUBINA, Chief Judge, JORDAN and ALARCÓN,[*] Circuit Judges.

PER CURIAM:

This case arises from a tragic situation involving innocent bystanders caught in the middle of a police chase of an armed suspect. Appellees Joann Cooper ("Cooper") and her son (collectively "Appellees") were seriously injured when an armed bank robber attempted to elude the police by attempting to steal the car in which they were riding. Rather than allow the armed bank robber to escape with hostages, the officers on the scene fired their weapons at the suspect until he was neutralized. Unfortunately, Cooper and her son were both hit by bullets intended for the bank robber. Appellant Officer Ryan Black was one of the officers on the scene. He appeals the district court's order finding that he is not entitled to qualified immunity for his actions stemming from this tense confrontation. Despite our sympathy for the Appellees, we reverse the district court's order denying Officer Black qualified immunity, and remand this case with directions that Officer Black be granted qualified immunity and dismissed from this case with prejudice.

I.

---

[*]Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting by designation.

On March 26, 2010, the Jacksonville Sheriff's Office dispatched officers to respond to the robbery of a Wachovia Bank and informed the officers that the suspect was armed. Officers arrived on the scene and observed the suspect running to a nearby Wendy's with a gun still in his hand. At the same time, Cooper was in her automobile with her two children waiting in the Wendy's drive-thru lane. The suspect approached the car and forced Cooper into the passenger seat to gain control of the vehicle.

Multiple police officers, including Officer Black, arrived at the Wendy's restaurant and observed the attempted carjacking. The officers ordered the suspect to stop and show his hands. Though Cooper successfully wrenched the gun from the suspect's hand, the officers continued to believe the suspect to be armed. Officer Black also observed the children in the back seat of the car.

Officer Jessie York fired his shotgun twice at the open car door. Upon hearing these gunshots, officers on the scene concluded, albeit incorrectly, that the suspect had begun to fire upon the officers. Officer Black, along with Officers Darries Griffith and York, began to fire at the car. After firing all of the ammunition in his gun's magazine, Black reloaded his weapon and continued firing as Cooper's car began to move past him. The suspect then attempted to exit the car. In total, Officer Black, who continued to fire his weapon until the suspect

3

was neutralized, fired 24 shots—four times as many shots as the officer who fired the second most bullets.

Unfortunately, Cooper and her son were struck by bullets during this confrontation. Cooper was hit in the right foot and required surgery. Her son was shot in the arm and upper torso. He was rushed to the hospital with critical injuries, including a collapsed lung and multiple fractures.

Cooper filed a lawsuit on behalf of herself and her son against the officers involved in the shooting in their individual capacities, asserting claims premised upon liability pursuant to 42 U.S.C. § 1983 for: (1) an unreasonable seizure by the individual officers, in violation of the Fourth and Fourteenth Amendments; and (2) a violation of the Substantive Due Process Clause of the Fourteenth Amendment.[1] The officers moved to dismiss on the basis of qualified immunity, which the district court granted for all officers save Officer Black. The district court denied Officer Black's motion to dismiss, finding that he was not entitled to qualified immunity because his actions, firing 24 shots compared to six or four, were unreasonable and "shocked the conscience."

## II.

---

[1] Cooper and her son also brought claims against Sheriff John Rutherford in his official capacity as Sheriff of Jacksonville. Those claims are not a part of this appeal.

4

When a defendant raises the defense of qualified immunity in a motion to dismiss, this court "review[s] the denial of [the] motion . . . *de novo* and determine[s] whether the complaint alleges a clearly established constitutional violation, accepting the facts alleged in the complaint as true, drawing all reasonable inferences in [Appellees'] favor, and limiting our review to the four corners of the complaint." *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (citation omitted).

### III.

When faced with a question of qualified immunity, this court conducts a two-step analysis to determine whether Appellees carried their burden of "establishing both that [Black] committed a constitutional violation and that the law governing the circumstances was already clearly established at the time of the violation." *Youmans v. Gagnon*, 626 F.3d 557, 562 (11th Cir. 2010) (per curiam) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 815–816 (2009)). We may consider "the two prongs of the qualified immunity analysis" in any order, at our discretion. *Pearson*, 555 U.S. at 236, 129 S. Ct. at 818.

With regard to both the Fourth Amendment unreasonable seizure claim and the substantive due process claim, discussed *infra*, our analysis begins and ends with the clearly established prong. Assuming, without deciding, that Officer

5

Black committed a constitutional violation, Appellees have not provided this court with a preexisting case with facts that are "materially similar" to the events leading to their injuries and the alleged constitutional violations. *See Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1032–33 (11th Cir. 2001) (en banc). Therefore, Appellees have not carried their burden of showing that the alleged constitutional violations were clearly established under prevailing United States Supreme Court, Florida Supreme Court, or Eleventh Circuit law. *See Thomas v. Roberts*, 323 F.3d 950, 955 (11th Cir. 2003) ("[O]nly Supreme Court cases, Eleventh Circuit caselaw, and [state] [s]upreme [c]ourt caselaw can 'clearly establish' law in this circuit.").

### A.

Regarding the Fourth Amendment unreasonable seizure claim, Appellees point to two cases, *Brendlin v. California*, 551 U.S. 249, 127 S. Ct. 2400 (2007) and *Vaughan v. Cox*, 343 F.3d 1323 (11th Cir. 2003), that they believe clearly establish that the events on March 26, 2010, amount to a seizure for the purposes of the Fourth Amendment. However, the facts underpinning those cases are not materially similar to the case at bar and neither clearly establishes that a Fourth Amendment seizure occurred. In *Brendlin*, the Supreme Court merely held that when officers stop a car during a routine traffic stop, the driver and passengers

6

alike are seized. 551 U.S. at 251, 127 S. Ct. at 2403. The Supreme Court never mentioned the use of deadly force, hostages, innocent bystanders, or any other facts that are remotely similar to the case at bar. Therefore, even if the Supreme Court intended *Brendlin* to apply to the events that took place in this case, it could not have provided Officer Black with fair notice that a seizure was taking place and thus cannot be used to satisfy the requirement that the law be clearly established. *See Coffin v. Brandau*, 642 F.3d 999, 1015 (11th Cir. 2011).

Meanwhile, this court in *Vaughan* certainly clearly established that if a passenger-suspect is shot by a bullet intended to stop his fleeing during a chase with police officers, then he is seized for purposes of Fourth Amendment analysis. 343 F.3d at 1329 (holding a seizure occurs when a passenger of a car "[is] hit by a bullet *that [is] meant to stop him*") (emphasis added)). However, this court just as clearly acknowledged the difference between the events in *Vaughan* and the exact situation in this case—when an innocent bystander or hostage is accidentally shot by police officers chasing a fleeing suspect. *Vaughan*, 343 F.3d at 1328 n.4 (noting that the innocent bystander and hostage cases from other circuits were unhelpful in deciding *Vaughan* because the passenger shot during the chase was also a suspect that the police officers were trying to apprehend). Therefore, pre-existing case law does not clearly establish that Appellees were seized when

7

Officer Black's bullet accidentally struck them during the confrontation with the armed bank robber.

Nor is this a case involving an instance in which "a general constitutional rule already identified in the decisional law. . . appl[ies] with obvious clarity to the specific conduct in question[.]" *See United States v. Lanier*, 520 U.S. 259, 271, 117 S. Ct. 1219, 1227 (1997); *see also Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919 (11th Cir. 2000) ("When . . . 'the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw,' the official is not entitled to the defense of qualified immunity."). The existing case law regarding whether Appellees were seized for the purposes of the Fourth Amendment is far from settled, as evidenced by the varying decisions from our sister circuits analyzing similar situations. Compare *Childress v. City of Arapaho*, 210 F.3d 1154 (10th Cir. 2000) (no seizure), *Schaefer v. Goch*, 153 F.3d 793 (7th Cir. 1998) (no seizure), *Medeiros v. O'Connell*, 150 F.3d 164 (2d Cir. 1998) (no seizure), *Rucker v. Harford Cnty.*, 946 F.2d 278 (4th Cir. 1991) (no seizure), *and Landol-Rivera v. Cruz Cosme*, 906 F.2d 791 (1st Cir. 1990) (no seizure), *with Fisher v. City of Memphis*, 234 F.3d 312 (6th Cir. 2000) (seizure).

8

Moreover, even if we determine that it is clearly established that Appellees were seized for the purposes of the Fourth Amendment, we are unaware of any case that clearly establishes that Officer Black's actions were constitutionally unreasonable. The district court determined that the other officers who fired their weapons acted reasonably because the use of deadly force against the fleeing armed bank robber was appropriate, *see Robinson v. Arrugueta*, 415 F.3d 1252, 1255 (11th Cir. 2005), and they only fired between four and six times. However, the district court also found that Officer Black was unreasonable for firing 24 times. We agree that deadly force against the armed robber was appropriate, but we cannot find a single case in this circuit or from the Supreme Court that clearly establishes that a large number of shots fired makes a reasonable use of deadly force unreasonable. In fact, this court recently held that "[a] police officer is entitled to continue his use of force until a suspect thought to be fully armed is 'fully secured.'" *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 822–23 (11th Cir. 2010) (quoting *Crenshaw v. Lister*, 556 F.3d 1283, 1293 (11th Cir. 2009)).

Once the car started moving forward, Officer Black was faced with the choice of either allowing the suspect to escape with multiple hostages and perhaps leading police on a high speed chase through the busy streets of Jacksonville or ensuring that the suspect could not leave the Wendy's parking lot. We cannot say

Case: 11-14722    Date Filed: 08/30/2012    Page: 10 of 11
(10 of 82)

that it is clearly established he made the wrong choice and committed a constitutional violation. Because "preexisting law [did not] provide [Black] with fair notice that" firing 24 shots was unreasonable in these circumstances, he is entitled to qualified immunity as to Appellees' Fourth Amendment claim for unreasonable seizure. *See Coffin v. Brandau*, 642 F.3d 999, 1015 (11th Cir. 2011).

**B.**

For the same reasons Officer Black is entitled to qualified immunity for Appellees' Fourth Amendment claims, he is also entitled to qualified immunity for the Fourteenth Amendment substantive due process claims. If Officer Black's actions did not constitute a seizure of Appellees, then the non-custodial nature of the interaction precludes liability unless Officer Black's actions were "arbitrary or conscience shocking." *White v. Lemacks*, 183 F.3d 1253, 1257 (11th Cir. 1999) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 128, 112 S. Ct. 1061, 1070 (1992)). Again, assuming without deciding that Officer Black violated Appellees' constitutional rights, we conclude that it was not clearly established that his actions violated the Substantive Due Process Clause of the Fourteenth Amendment. "[O]nly the most egregious official conduct can be said to be 'arbitrary in the constitutional sense[.]" *Cnty. of Sacramento v. Lewis*, 523 U.S.

10

833, 846, 118 S. Ct. 1708, 1716 (1998) (quoting *Collins*, 503 U.S. at 129, 112 S. Ct. at 1070). When officers are forced to make immediate, hasty decisions, "even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates . . . [the Constitution]. . . . [A] purpose to cause harm is needed . . . for due process liability in a pursuit case." *Id.* at 853–54, 118 S. Ct. at 1720. There is no case law from this circuit or the Supreme Court that clearly established that Officer Black's actions shock the conscience. Therefore, we conclude that he is entitled to the defense of qualified immunity as to Appellees' substantive due process claims.

## IV.

For the aforementioned reasons, we reverse the district court's order finding that Officer Black is not entitled to qualified immunity as to Appellees' Fourth and Fourteenth Amendment claims and remand this case with directions that Officer Black be granted qualified immunity and dismissed from this cause with prejudice.

**REVERSED and REMANDED.**

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

John Ley
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

August 20, 2012

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 11-14722-FF
Case Style: Joann Cooper v. Ryan Black
District Court Docket No: 3:10-cv-00695-HES-TEM

Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the CRIMINAL JUSTICE ACT must file a CJA voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for a writ of certiorari (whichever is later).

Pursuant to Fed.R.App.P. 39, costs taxed against appellee.

The Bill of Costs form is available on the internet at www.ca11.uscourts.gov

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Janet K. Spradlin, FF at (404) 335-6178.

Sincerely,

JOHN LEY, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs